988

Lewis Spencer Morris, as Trustee under the Last Will and Testament of Louis Zborowski, Deceased, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 88524. Promulgated November 29, 1939.

*Bronson Winthrop, Esq.*, and *Hamilton Hadley, Esq.*, for the petitioner.

*Loren P. Oakes, Esq.*, for the respondent.

OPINION.

Mellott: The Commissioner determined a deficiency in the income tax of petitioner for the year 1933 in the amount of $2,205, all of which is in issue.

Petitioner, the duly appointed, qualified and acting trustee under the will of Louis Zborowski, in due time filed with the collector of internal revenue for the second district of New York a fiduciary return of income for the year 1933. Therein he reported total gross income of $38,407.42, consisting of interest in the amount of $38,007.42 and dividends on the stock of domestic corporations subject to tax in the amount of $400. The following deductions were claimed:

| | |
|---|---|
| Taxes paid—check tax— | $0.78 |
| George W. Grice-Hutchinson | 22,500.00 |
| Other deductions authorized by law | 1,341.62 |

The disallowance by the respondent of the deduction of the amount paid to Grice-Hutchinson gives rise to the present controversy. We find the facts to be as stipulated, but shall set out herein only those necessary for an understanding of the issue to be decided.

Prior to and during the year 1918 Louis Zborowski, a citizen of the United States, was living in England. He owned considerable property, most of which was situated in New York City, and was

paying substantial income taxes to the United States and British Governments. He consulted George William Grice-Hutchinson (hereinafter referred to as Grice-Hutchinson), an English solicitor, who undertook to "devise, evolve and put into effect some scheme such as the creation of a trust for accumulation or the formation of some company or corporation to hold or accumulate a part of his income so that such income might legitimately avoid English taxation." To that end the following steps were taken: On October 29, 1918, Zborowski gave Grice-Hutchinson a general power of attorney, authorizing him "to call in and to collect and to take possession of any monies, funds, stocks, shares and securities" belonging to him and also "to enter into and take possession" of all his lands, tenements, hereditaments and real estate. Grice-Hutchinson then formed a Spanish corporation known as La Confianza Iberica (hereinafter referred to as the Spanish company) with an authorized capital stock of 250 shares of the par value of 1,000 pesetas each, all of which were subscribed for at par, 146 shares being issued to Zborowski, 75 shares to a corporation with which Grice-Hutchinson was connected and in which he was personally interested, and the remainder to others.

Pursuant to the powers granted to him by the power of attorney, Grice-Hutchinson entered into a contract with the Spanish company, dated March 3, 1919. This contract was later modified by an agreement dated March 25, 1923. Pursuant to the contract of March 3, 1919, Grice-Hutchinson, as attorney in fact for Zborowski, transferred to the Spanish company stock and bonds of various companies formed to hold real estate in the city of New York belonging to Zborowski, amounting in par value to approximately $5,000,000. In consideration for the transfer of these properties, the Spanish company paid Grice-Hutchinson the sum of $15,000 and gave its bond for $8,000,000, payable without interest on March 2, 1939 (or on the prior termination of the contract as therein provided), which bond amounted at the date of the death of Zborowski, i. e., on October 19, 1924, to $5,375,000, having been reduced to that amount under the agreement of March 25, 1923.

The contract of March 3, 1919, provided for the creation of a "deposit, administration and trust" and for the appointment of Grice-Hutchinson as the depositary, administrator, and trustee. It was created in order that Grice-Hutchinson would have the possession of the properties sold to the Spanish company, and the income therefrom, so that he might deliver these properties and income to the Spanish company at the termination of the trust. The "deposit, administration and trust" was to continue during the life of Grice-Hutchinson, but not beyond the second day of March 1939. Of the

securities transferred to the Spanish company, Grice-Hutchinson, as depositary and trustee, received securities amounting to approximately $4,000,000 in face value. Under the contract the legal title to the properties was vested in him as trustee and he was given wide and varied powers. He was authorized and empowered, and it became his duty, among other things, to administer the securities so held by him; to sell the same in his discretion; to invest and reinvest the proceeds; to receive all the income thereof; and to invest and reinvest the income and all accumulations thereof for the benefit of the corporation and as otherwise provided in the contract. The contract provided that Grice-Hutchinson "shall not deliver to the company either capital or income until the termination of the deposit or trust." At the time of the death of Zborowski, Grice-Hutchinson held the stock and bonds of the various corporations which had been organized to hold Zborowski's real estate in the city of New York and other securities amounting in par value to the aggregate of $3,185,477.12.

The contract of March 3, 1919, provided that upon its termination for any reason whatsoever the legal title to all the properties deposited should *ipso facto* vest in the company, and that the depositary, Grice-Hutchinson, or his representatives should deliver possession of all of said properties to the company at its office in Madrid. Under the terms of the contract Grice-Hutchinson was to be entitled to a reasonable compensation for the services to be rendered by him in connection with the custody and administration of the properties mentioned in the agreement, and in connection with the collection of the income arising therefrom, and for all other services rendered by him thereunder, together with such disbursements as he might make and liabilities which he might incur for certain purposes.

Grice-Hutchinson accepted such deposit, administration, and trust and entered upon the performance of his duties under the contract of March 3, 1919. He soon found that these duties made it imperative for him to retire from his practice as solicitor in London, England, and to take up his residence in Spain, and he accordingly abandoned his practice in England and his home and associations there to take up his residence in Spain. Thereafter he devoted his entire time and energy to the service of the Spanish corporation, to acting as depositary, administrator, and trustee, and to assisting Zborowski in the management of his property and business affairs. By a letter dated November 14, 1922, Zborowski agreed to pay Grice-Hutchinson for his services under the contract of March 3, 1919, and so long as he should live, an annual remuneration of $35,000 and also the following additional amounts: (a) 10 percent of any in-

creased income over and above the income then produced by the real estate in which the said Zborowski was interested, and (b) the further sum of $10,000 per annum so long as it should be necessary or desirable for Grice-Hutchinson to reside out of England. Under this agreement Zborowski was not liable to Grice-Hutchinson in the first instance for the payment of any of these sums, but merely guaranteed that the payments to be received by him from the Spanish company would not fall short of the total compensation due him as above stated. It was further provided in the letter that in the event Zborowski should predecease Grice-Hutchinson and make provision for him under his will by way of an annuity, the amount of such annuity should be credited against the amount of compensation owing to him and should not be payable in addition thereto.

Grice-Hutchinson entered into a further agreement with the Spanish company dated March 25, 1923, under which he was appointed managing director of the Spanish company, with power to administer and conduct all the business of the company; to appoint and remove all the employees and servants of the company, with the sole exception of the secretary; to determine their duties and functions and their fees and remuneration; and to enter into contracts and execute all acts which he might consider necessary or suitable to the interests of the company.

During the years immediately following the execution of the contract of March 3, 1919, Grice-Hutchinson retained out of the funds of the Spanish company as his compensation the sum of $25,000 per annum until May 20, 1920, the sum of $35,000 per annum from the latter date to November 1922, and, thereafter, upon the retirement from his practice as a solicitor and taking up his residence in Spain, he retained the sum of $45,000 per annum. These amounts were retained with the approval of Zborowski. After the year 1922 and before Zborowski's death the income of the real estate had so increased that Grice-Hutchinson was entitled to receive and was receiving additional compensation of approximately $2,000 per annum under the provision of the contract allowing him 10 percent of the increased income.

After the death of Zborowski on October 19, 1924, his will dated November 26, 1920, was duly admitted to probate in the Surrogate's Court of the County of New York on December 4, 1924, letters testamentary thereon were duly issued on December 5, 1924, to Lewis Spencer Morris (the petitioner herein) and Charles S. McVeigh and they duly entered upon the discharge of their duties as such executors.

By the sixth article of his will Zborowski appointed Alexander Fraser Nalder and Grice-Hutchinson as trustees under his will, and

provided that, in the event either of them should predecease him, or should fail to qualify, or having qualified, should die, resign, or for any reason fail to complete the execution of his duties as such trustee, then Lewis Spencer Morris (petitioner herein) should be appointed. Nalder and Grice-Hutchinson both renounced their appointments. Petitioner accepted, duly qualified, and is now the sole trustee under Zborowski's will.

In the fifth article of his will Zborowski devised and bequeathed all of his residuary estate in trust to pay the net income as follows: an annuity of $30,000 per annum to Grice-Hutchinson during his life and the balance of the net income to his wife, Violet Ethel Zborowski (now Violet E. Singer) during her life or until her remarriage, with further provisions in the event of her remarriage or in the event of her predeceasing the testator not presently important. Grice-Hutchinson notified the executors of the decedent's estate that he elected to waive the provision of the will giving him an annuity of $30,000 during his life and to claim the amounts due and to become due to him under the aforementioned agreements as creditor of the estate and of the Spanish company.

At the time of his death Zborowski still owned the obligation of the Spanish company created by the agreement dated March 3, 1919, in the original principal amount of $8,000,000 without interest, as amended by the agreement of March 25, 1923, which reduced the principal of the bond to $5,375,000 without interest, and also the 146 shares of stock of the Spanish company, together with other miscellaneous securities and property. After his death his executors acquired the outstanding 104 shares of the Spanish company stock and thereby acquired the ownership of all the outstanding stock of the company.

During the early part of 1925 the executors of the decedent's estate, the Spanish company, the widow of the decedent, and three other persons entitled to a remainder interest in the trust estate requested Grice-Hutchinson to retire from the deposit, administration, and trust created under the contract of March 3, 1919, as amended, and to deliver the securities and other property held by him to new depositaries. Grice-Hutchinson expressed his willingness to retire and to relinquish all claim to further compensation from the corporation upon receiving proper compensation by reason of his enforced retirement from the practice of his profession and the enforced removal of his residence from Great Britain to Spain.

Under date of June 25, 1925, a contract was entered into between Grice-Hutchinson, the Spanish company, Lewis Spencer Morris, and George G. Plant. The objects of the contract were stated to be the resignation and retirement of Grice-Hutchinson as depositary, ad-

ministrator, and trustee for the Spanish company under the contract of March 3, 1919, and the settlement of his accounts with that corporation; the determination and settlement of the liability of the Spanish company to Grice-Hutchinson under the terms of that contract; and the appointment of new depositaries, administrators, and trustees for the Spanish company, who were to succeed Grice-Hutchinson and receive from him the property which he held as depositary, administrator, and trustee. In this contract Grice-Hutchinson agreed to resign and retire and to settle his accounts with the Spanish company, and to release the Spanish company and the new depositaries from all further claim or liability for compensation for his services under the contract of March 3, 1919. The Spanish company agreed to pay him the following consideration: the sum of $300,000 in cash or securities (this sum being the approximate equivalent of an annuity of $22,500 per annum during his life) and also to pay him $12,500 per annum during his life in quarterly installments. The contract further provided for the appointment of Lewis Spencer Morris and George G. Plant as the new depositaries, administrators, and trustees to hold the properties in the same manner and subject to the same trusts and conditions as those set out in the agreement of March 3, 1919, in respect of the property to be held by Grice-Hutchinson.

On the same day that the above contract was made, i. e., June 25, 1925, another contract was entered into between the executors of the decedent's estate and Grice-Hutchinson, in which the executors agreed to pay Grice-Hutchinson $10,000 per annum during his life, and in which they, as executors, guaranteed that the Spanish company would duly and promptly pay him the annual sum of $12,500 during his life as specified in the other contract bearing the same date. In this contract Grice-Hutchinson agreed to accept (1) the sum of $300,000 paid to him by the Spanish company; (2) the obligation of the Spanish company to pay him $12,500 annually during his life, guaranteed by the executors; and (3) the obligation of the executors to pay him the sum of $10,000 annually during his life in full satisfaction of all claims against the estate of the decedent under the agreement of November 16, 1922.

On October 10, 1930, the executors of the decedent's estate delivered to the petitioner, as the sole acting and qualified trustee under the will of the decedent, all the assets of the estate of the decedent remaining in their hands and the petitioner agreed to assume the covenants, claims, and guarantees previously entered into between the executors and Grice-Hutchinson in the agreement of June 25, 1925. Thereafter, and prior to the year 1933, the Spanish company was dissolved and such proceedings were had and taken that all of

the assets of that company and of its depositaries were turned over to the petitioner as trustee under the will of the decedent, subject to the obligations of the Spanish company and its depositaries, and thenceforth the petitioner paid Grice-Hutchinson the annual sum of $10,000 which the executors had theretofore been obligated to pay and the annual sum of $12,500 which the Spanish company had theretofore paid. The aggregate of these sums, paid in 1933, is the amount now in issue.

Upon brief petitioner contends (1) that the payments to Grice-Hutchinson were not made in settlement of an amount owing by Zborowski at the time of his death and are not therefore payments in discharge of a capital obligation; (2) that they were made in compromise and settlement of an obligation which had devolved upon the executors and trustee by operation of law to continue Grice-Hutchinson in the employ of the estate and to pay him compensation for services which he should render into the future; (3) that the payments to him under the compromise retained their original character of compensation for services; (4) that they "were a necessary business expense of the trust for the benefit of income"; (5) that they have twice been held by the state court to be properly chargeable to the income of the trust and those determinations are controlling; and (6) that, since the compromise with Grice-Hutchinson was not a device to evade or minimize income tax, "the petitioner is entitled to the favorable consideration of the Board."

The last contention need not be discussed at any length. The question for our determination is solely one of law and in resolving it consideration must be given to all the facts of record. The effect, if any, of the judgments of the state courts—which have not been referred to in our recapitulation of the facts—will be discussed later.

Petitioner's first four contentions may be considered together. We interpret them generally to be that the payments to Grice-Hutchinson were "ordinary and necessary expenses paid or incurred during the taxable year in carrying on * * * (a) trade or business." If so, then they were deductible from gross income under section 23 (a) of the Revenue Act of 1932; for the net income of a trust, under section 162 of the Revenue Act of 1932, is to be "computed in the same manner and on the same basis as in the case of an individual." Respondent determined the deficiency upon the theory and now contends that the payments "do not represent ordinary or necessary business expenses incurred in carrying on the business of the trust"; that they were made in settlement of claims and cancellation of contracts and are not deductible from income; that they were either capital expenditures or expenditures of the "nondescript" type for which no deduction from gross income may be allowed; and

that, even if it be assumed for the purpose of argument that they constituted expenses of carrying on a business, still they can not be classified as "ordinary."

In *George Vanderbilt Trust*, 36 B. T. A. 967, this Board considered the question of whether or not trustees invested with powers similar to those given to petitioner under the will of Zborowski were carrying on a trade or business. The petitioners in that proceeding contended that an attorney's fee paid by the trust as an incident to litigation involving the trust's claim to accumulated income and corpus of another trust was deductible as an ordinary and necessary business expense. It was held that the trust there involved was not engaged in carrying on a trade or business and the deduction was denied. Some of the language used in that opinion seems to be apposite here:

\* \* \* Conceivably, testamentary trusts such as these petitioners may be engaged in business of one kind or another, and no less conceivably they may refrain from engaging in business. The statute applies its provisions similarly to trusts and to individuals, and it can not be dogmatically said as to a trust, even though it be one of long standing, that an attorney's fee reasonably and necessarily paid by it is deductible as an expense of carrying on business any more than it can be said as to an individual. *Dorr* v. *United States*, 18 Fed. Supp. 92; *Morse* v. *Helvering*, 85 Fed. (2d) 262; *Monell* v. *Helvering*, 70 Fed. (2d) 631; *Ames* v. *Commissioner*, 49 Fed. (2d) 853.

Petitioner, as trustee under the will of Louis Zborowski, was empowered to hold, invest, and reinvest the principal of the trust estate, to collect and receive the rents, income, issues, and profits, to pay taxes and other necessary and proper charges, and to pay the net income to the widow of the decedent. He was authorized to sell or exchange the whole or any part of the real or personal property contained in the trust estate, to borrow money for the purpose of paying any loans or debts, and, generally speaking, to act toward the trust estate as an individual would act in handling property and funds owned by him. During the taxable year, however, his activities were confined to the receipt of interest and dividends amounting to $38,407.42, the payment of $22,500 to Grice-Hutchinson, $1,341.62 for legal fees and trustees' commissions, 78 cents for check tax, and the distribution of $14,565.02 to the widow of the decedent. He reported nothing under schedules A to D, inclusive, of the return, these schedules being entitled "Income (or loss) from trade or business", "Income from rents and royalties", "Profit or loss from sale of stocks, bonds, real estate, etc.", and "Capital net gain or loss from sale of capital assets." These limited activities indicate that petitioner was a mere passive conservator of a well invested trust estate. Apparently neither he nor the trust did anything which could properly be classified as carrying on a trade or business. *George Vander-*

*bilt Trust, supra;* cf. *Kane* v. *Commissioner,* 100 Fed. (2d) 382; *Sir William Plender,* 2 B. T. A. 940; *F. Tinker & Sons Co.,* 1 B. T. A. 799; *Scott* v. *Commissioner,* 29 Fed. (2d) 472; *Brawner* v. *Burnet,* 63 Fed. (2d) 129.

But even though the trust were carrying on a trade or business, it still must be held that the payments made to Grice-Hutchinson were not ordinary or necessary expenses paid or incurred in carrying on such trade or business. When the decedent died the executors of his estate were faced with a rather unusual situation, which is aptly described in petitioner's brief in the following language:

\* \* \* substantially all of the income producing properties were held by Grice-Hutchinson under the Deposit Agreement of March 3, 1919, and under this agreement all of the income from these properties was to be impounded by Grice-Hutchinson as Depositary until the year 1939 at which time the properties plus the accumulated income were to be applied to the payment of the obligation of the Spanish Company to pay Zborowski or his estate the sum of $5,375,000 as reduced from the original figure of $8,000,000.

The fact that the Executors received from Zborowski a controlling interest in the stock of the Spanish Company was of no help in this situation. The assets actually held by the Spanish Company amounted to only approximately $20,000 and the income of this was applicable to Spanish taxes and other current expenses of that company. All of its other property was held and controlled by Grice-Hutchinson under the Deposit Agreement and there was no way in which that agreement could be terminated prior to the year 1939 without his cooperation. \* \* \* A sale of the Spanish Company's obligation and its stock was obviously out of the question except at enormous sacrifice—first, because there would have been no income for the purchaser until the year 1939, and second, because the purchaser would not have control of the income producing assets until that year. Nevertheless, some arrangement had to be made so that the potential income of Zborowski's properties could be realized for the benefit of his widow. These were the motivating considerations underlying the June 25, 1925 contracts with Grice-Hutchinson.

It is obvious from the stipulated facts that the executors of the estate, the Spanish company, the widow of the decedent, and all those entitled to an interest in the remainder of the estate were desirous of eliminating Grice-Hutchinson to the end that the property of Zborowski and the income from it should be available to them immediately. Grice-Hutchinson agreed to retire upon receiving proper compensation for the loss sustained by reason of his enforced retirement from the practice of his profession and the removal of his residence from Great Britain to Spain. This was the background for the contract of June 25, 1925. It provided that in consideration of his resignation and retirement as depositary and trustee, and his release of the Spanish company from all further claim or liability to compensate him for his services under the contract of March 3, 1919, the Spanish company should pay him $300,000 in cash or securities and an annuity of $12,500 during his life, and that the

executors of the estate should pay him an annuity of $10,000 during his life and guarantee that the Spanish company would perform its agreement. Grice-Hutchinson agreed to accept these payments in full satisfaction of all claims against the estate and they were so accepted.

Whether the payments so made should, or should not, be characterized as capital expenditures need not be decided. "The idea that everything which is not strictly a capital investment must be a deductible expense is unsound." *Connally Realty Co.*, 31 B. T. A. 349, 350. The obligation to make the annual payments to Grice-Hutchinson had its genesis in the desire of the executors and beneficiaries of the trust to get immediate control of the assets which, prior to the execution of Grice-Hutchinson's tax avoidance scheme, had belonged to Zborowski and otherwise would not have been available to them until 1939. In order to do this they had obligated themselves to make the payments in question. Petitioner, as their transferee, had assumed the same obligation. As stated by petitioner upon brief: "* * * Zborowski's arrangements with Grice-Hutchinson were an impediment to the collection of the potential income of the estate. The annual payments of $22,500 to Grice-Hutchinson were a part of the consideration necessarily paid to him for the removal of that impediment." The payments may not, in a strict sense, be capital expenditures; but that is not the important question. Were they expenses "*paid or incurred* in carrying on a trade or business?" We think not. They were *incurred* when petitioner, as trustee, acquired the assets. They were not paid for services rendered or to be rendered. Grice-Hutchinson had paid himself, as he had a right to do under the contract with Zborowski, for all services rendered prior to June 25, 1925; and under the contract of that date he not only had no duties to perform but, having shorn himself of all offices, he could not have served the Spanish company, executors, or this trustee if he had desired to do so. The payments were made in consideration of Grice-Hutchinson resigning and retiring as depositary, administrator, and trustee and there is no justification for treating them as compensation for services or as expenses paid by this trustee in carrying on any trade or business of the trust. Cf. *Commissioner* v. *Field*, 42 Fed. (2d) 820; *Callie E. Robertson*, 28 B. T. A. 635; *National Cottonseed Products Corporation*, 28 B. T. A. 67; affd., 76 Fed. (2d) 839.

Petitioner's contention that certain "determinations" by the Supreme Court of New York are controlling remains to be considered. Incorporated in the stipulation filed herein is a "final Judgment" of the Supreme Court in and for New York County, entered on September 19, 1930. It indicates that an action had been instituted by

the executors for the purpose of settling their accounts; that a referee had examined the accounts and vouchers and filed his findings of facts and conclusions; and that on the strength thereof the court had entered its order finding that the executors had "well and properly accounted for all and singular the moneys and securities belonging to" the estate of Zborowski. The court ratified and confirmed the settlement made with Grice-Hutchinson, found that the $300,000 "was properly made out of principal, and that the annuities of $10,000 and $12,500 per annum which the plaintiffs as such executors have made or caused to be made to said George William Grice-Hutchinson pursuant to said compromise and settlement out of the income of the estate and out of the income of the [Spanish company] * * * respectively, be and the same hereby are ratified and confirmed and that the same were properly made out of income * * *." Also incorporated in the stipulation are: (1) Complaint filed by petitioner in the Supreme Court, (2) final order approving agreement of compromise, etc., entered October 17, 1936, and (3) agreement of compromise signed by the widow, beneficiaries under Zborowski's will, and other interested parties, dated March 18, 1936.

The last mentioned documents disclose that under date of April 10, 1929, an agreement of compromise had been made between the executors and the heirs with reference to the "Allocation and/or apportionment of receipts and/or disbursements of cash and/or property as between principal account and income account", made by the executors. While the agreement is not in evidence, the references to it in the documents which are in evidence indicate that the parties had agreed that the annuities to Grice-Hutchinson should be charged to income and the lump sum of $300,000 paid to him should be charged to principal, even though both were paid for the same purpose. The judgments relied upon apparently merely approved—ratified and confirmed—the earlier agreements of the parties. In our opinion they are not controlling upon the issue before us. *United States* v. *Mitchell*, 74 Fed. (2d) 571; *Edgar M. Carnrick*, 21 B. T. A. 12; *First Mechanics National Bank of Trenton, Executor*, 40 B. T. A. 876, and cases therein cited.

Respondent's alternative contention, that the payments in question were not "ordinary" business expenses even though it should be held that they were "necessary", has been considered. While we believe that this contention is not without merit, we choose to bottom our decision upon the grounds set forth above. The respondent did not err in denying the claimed deduction.

*Judgment will be entered for the respondent.*